# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701;<br><br>                 Plaintiff,<br><br>     v.<br><br>DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior,<br>1849 C Street, NW<br>Washington DC 20240;<br><br>BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service,<br>1849 C Street, NW<br>Washington DC 20240; and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street, NW<br>Washington, DC 20240;<br><br>                 Defendants. | Case No. 1:26-cv-00587<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     Plaintiff Center for Biological Diversity ("the Center" or "Plaintiff") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue an initial determination ("90-day finding") on a petition submitted by the Center and five other groups to list the coastal black-throated green warbler and concurrently designate critical habitat, in violation of the Endangered Species Act's ("ESA" or "Act") mandatory deadline. The Service's

failure to meet the deadline delays lifesaving protections for the warbler, increasing the species' risk of extinction.

2.   Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated ESA section 4(b)(3)(A), 16 U.S.C. § 1533(b)(3)(A), by failing to timely issue a 90-day finding for the coastal black-throated green warbler, and directing the Service to issue the finding by a date certain.

## JURISDICTION

3.   This Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g), the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; and the Administrative Procedure Act, 5 U.S.C. § 706(2).

4.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) and 16 U.S.C. § 1540(g)(3)(A) because Defendants reside in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

5.   Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 93,000 active members throughout the country.

6.   The Center brings this action on behalf of its members who derive recreational, educational, scientific, professional, and other benefits from the coastal black-throated green

warbler and its habitat. Plaintiff's members' interests in protecting and recovering the warbler and its habitat are directly harmed by the Service's failure to issue a timely 90-day finding, delaying critical protections under the ESA that can put the warbler on a path to recovery.

7. For example, Center member Andy Wood is a naturalist, conservationist, educator, and wildlife photographer, based in North Carolina, committed to the conservation of coastal black-throated green warblers, as well as other bird species, salamanders, and snails. He believes coastal black-throated green warblers are charming birds. He appreciates the species' physical beauty by looking at photographs of individuals on iNaturalist and Cornell's website and at John J. Audubon's painted illustrations. Mr. Wood directs conservation efforts on a large, extremely biodiverse patch of Longleaf Pine Savannah, Pond Pine Woodland, and Cypress-Tupelo Woodland habitats in New Hanover County, North Carolina, where he searches on a daily basis for coastal black-throated green warblers. Mr. Wood also spends many days looking for coastal black-throated green warblers in the fringing swamp forests in the Northeast Cape Fear River basin, where he has observed a stand of rare Atlantic white cedar alongside 500-year-old Baldcypress trees. He knows these trees are prime coastal black-throated green warbler habitat and looks for the birds during those visits. Mr. Wood also travels throughout the southeast United States to observe birds with other birders. He will continue searching for coastal black-throated green warblers and has no plans to stop looking for them.

8. During his 50 years of birding, Mr. Wood has seen coastal black-throated green warblers about 10 times—most recently, at Alligator River National Wildlife Refuge in or around 2003. Mr. Wood recently focused his efforts to find coastal black-throated green warblers during the 2025 Christmas Bird Count, when he and his eldest son visited multiple habitats in North Carolina in search of the bird. During his daily birding outings, Mr. Wood uses Merlin, an

application on his phone that recognizes bird calls, in hopes that it will pick up a coastal black-throated green warbler song. Each day that Mr. Wood visits habitat in the coastal black-throated green warbler's range, he strives to see the species—and, in his words, "hope springs eternal." Mr. Wood's recreational and aesthetic interests are harmed by the Service's failure to finalize protections for the coastal black-throated green warbler because the decline and potential loss of the species lessens his experience in nature and joy in sharing these encounters with others.

9. Center member Will Harlan regularly recreates in coastal black-throated green warbler habitat and enjoys searching for the species. Mr. Harlan is a wildlife enthusiast, and the coastal black-throated green warbler is one of his favorite birds in the world. He finds the bird's vibrant colors striking in the way that they pop against the background of the forest. He displays a poster of the species in his office and often receives comments about its beauty.

10. The coastal black-throated green warbler's song was one of the first bird calls that Mr. Harlan learned, and it was also one of the first bird calls that he taught to his sons. Mr. Harlan feels especially connected to the species because he loves hiking, kayaking, and otherwise exploring old growth forests in the southeastern United States with his family, and, to him, the coastal black-throated green warbler's song is the sound of the ancient forest. He last heard the birdsong during a spring 2024 morning with his family in the Alligator River National Wildlife Refuge; they rushed to the tree where they heard the song so that one of his sons, a wildlife photographer, could capture an image of the bird. Mr. Harlan knows that the coastal black-throated green warbler is a rare bird that lives and breeds in ancient giant bald cypress and Atlantic white cedar forest—which can include trees over 1,000 years old, and which is rapidly disappearing—so he feels a sense of spiritual enchantment when he hears its song.

11. Mr. Harlan enjoys traveling with his family to the forests that provide habitat for

the coastal black-throated green warbler and other unique wildlife. He has plans to again visit the Alligator River National Wildlife Refuge this summer. Within the year, he also plans to explore the Great Dismal Swamp on the North Carolina and Virginia border. He also intends to visit the Three Sisters Swamp, Croatan National Forest, and Black River Preserve in North Carolina—all prime habitat for the coastal black-throated green warbler. He will continue to visit swampy, lowland areas along the southeast coast with his family to search for coastal black-throated green warblers and has no plans to stop looking for them. Mr. Harlan's recreational and aesthetic interests in the bird and its habitat are harmed by the Service's failure to finalize protections for the coastal black-throated green warbler because the decline and potential loss of the species hurt his experience in nature and his joy in sharing these encounters with his family.

12. Defendants' violation of the ESA's 90-day deadline has delayed ESA protections for the coastal black-throated green warbler. This inaction harms Mr. Wood's, Mr. Harlan's, and other Center members' interests in the coastal black-throated green warbler by permitting the species' continued trajectory toward extinction, thereby decreasing the likelihood that Mr. Wood, Mr. Harlan, and other Center members will encounter the species as part of their excursions. These injuries are actual, concrete, and ongoing injuries, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries by providing ESA protection for the coastal black-throated green warbler, thus promoting its conservation and recovery. The Center and its members have no other adequate remedy at law.

13. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the coastal black-throated green warbler. The Secretary of the Interior has delegated administration of the ESA to the

Service. 50 C.F.R. § 402.01(b).

14. Defendant BRIAN NESVIK is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

15. Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

16. The ESA, 16 U.S.C. § 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

17. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

18. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" when it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

19. The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: "(A) the present or

threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." *Id*. § 1533(a)(1).

20. If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id*. §§ 1532(6), (20).

21. The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A).

22. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby an interested person may petition the Service to list a species as endangered or threatened. *Id*. § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines. First, "[t]o the maximum extent practicable," within 90 days of receipt of a listing petition the Service must publish an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id*. § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes, and that finding is a final agency action subject to judicial review. *Id*. § 1533(b)(3)(C)(ii).

23. If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must promptly publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

§ 1533(b)(3)(A).

24.     Within 12 months of receiving a petition for which the Service found that listing "may be warranted," the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

25.     If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id*. §§ 1533(a)(3)(A), (b)(3)(B)(ii). Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species and designate critical habitat. *Id*. § 1533(b)(6)(A).

26.     If the Service instead issues a finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id*. § 1533(b)(3)(C)(ii).

27.     The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id*. § 1533(a)(3).

28.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* § 1536(a)(2).

29. ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; *see also id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

## FACTUAL BACKGROUND

30. The coastal (Wayne's) black-throated green warbler (*Setophaga virens waynei*) is one of the country's rarest and most imperiled bird subspecies, occurring solely within the highly restricted range of coastal plain wetland forests of Virginia, North Carolina, and South Carolina. As addressed in the petition, this unique and disjunct subspecies of the black-throated green warbler has suffered a 90 percent long-term population decline over the past century, and conservative estimates place its population at under 2,200 individuals.


© Dr. Joel Poston

31. Nearly all of the coastal black-throated green warbler's wetland forest breeding habitat has been lost to logging, agriculture, and urban sprawl, and the species is exceptionally vulnerable to the loss of its remaining viable habitat. More than 60 percent of the bottomland

forests in which the coastal black-throated green warbler lives have already been destroyed. Its breeding areas of occupancy have declined between 12 and 85 percent since 1970, and the coastal black-throated green warbler is absent from or very rarely found within most of its historic population sites.

32. The Center and five other groups petitioned the Service to list the coastal black-throated green warbler under the ESA and concurrently designate critical habitat on November 7, 2023. The petition documented threats to the warbler from the continued rapid expansion of wood pellet production sourced primarily from Southeastern forests; urbanization; industrial agriculture; commercial logging on private and public lands; the songbird trade; collisions with buildings and cell towers within the species' migratory pathway; avian pathogens that have become more widespread due to the changing climate; increasing pathogens targeting the tree species on which the warbler depends; coastal habitat loss due to rising sea levels; human modifications to natural fire patters; the increasing intensity of the El Nino Southern Oscillation; food scarcity; phenological mismatch; and a decrease in insect biomass, particularly among caterpillars, the warblers' primary food source. The petition further explained that federal and state regulatory mechanisms are not adequate to protect the coastal black-throated green warbler from these threats.

33. Defendants received the petition on November 7, 2023.

34. It has been more than two years since the Service received the petition to list the coastal black-throated green warbler as threatened or endangered under the ESA and to concurrently designate critical habitat.

35. Plaintiff provided Defendants with 60-days' notice of their ESA violation, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter to the Service dated September 18, 2025. The

Service received the Center's notice that same day.

36. The Service has yet to issue a 90-day finding on the petition to list the coastal black-throated green warbler.

37. The Service's failure to publish a timely 90-day finding on the petition has also led to a delay in the Service's statutorily required 12-month finding. *See* 16 U.S.C § 1533(b)(3)(B) (the Service must make a 12-month finding no later than one year from receipt of petition).

38. The Service's 90-day finding on the petition to list the coastal black-throated green warbler is long past due.

## CLAIM FOR RELIEF

### Violation of the ESA for Failure to Publish a Timely 90-Day Finding for the Coastal Black-throated Green Warbler

39. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

40. The ESA requires that the Service publish its initial finding within 90-days of receipt of a petition "to the maximum extent practicable," 16 U.S.C § 1533(b)(3)(A), but in no case may the Service take longer than one year. *Id.* § 1533(b)(3)(B).

41. The Service received the petition to list the coastal black-throated green warbler on the ESA more than two years ago, on November 7, 2023, yet the Service has yet to issue the required 90-day finding for the species.

42. Therefore, Defendants have failed to perform their nondiscretionary duty to timely publish a 90-day finding for the coastal black-throated green warbler, in violation of the ESA. *See* 16 U.S.C. § 1533(b)(3)(A).

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requires that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by failing to issue a timely 90-day finding in response to the petition to list the coastal black-throated green warbler under the ESA;

2. Provide injunctive relief compelling Defendants to issue the 90-day finding by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted this 24th day of February, 2026.

Respectfully submitted,

/s/ Daniel H. Waltz
Daniel Waltz, D.D.C. No. D00424
    dwaltz@biologicaldiversity.org

Lia Comerford, *pro hac vice pending*
    lcomerford@biologicaldiversity.org

CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
(202) 386-6155